# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERRY OHLINGER'S MOVIE MATERIALS STORE, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>LEGEND MOVIE POSTERS CORPORATION, a Nevada corporation, LEGEND MOVIE POSTERS ENTERPRISE CORPORATION, a New Jersey corporation, SEAN CHATOFF (a/k/a DAVID CHATOFF), a New Jersey citizen, and XINGLING HU (a/k/a CELINE HU), a New Jersey citizen,<br><br>Defendants. | Case No. 14-CV-_____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jerry Ohlinger's Movie Materials Store, Inc. ("JOMMS" or "Plaintiff"), by and through its undersigned counsel, hereby alleges, from personal knowledge relating to allegations concerning its own actions, and on information and belief relating to allegations concerning others, as and for its complaint against defendants Legend Movie Posters Corporation ("Legend"), Legend Movie Posters Enterprise Corporation ("Legend Enterprise"), Sean Chatoff (a/k/a David Chatoff) ("Chatoff") and Xingling Hu (a/k/a Celine Hu) ("Hu") (collectively, "Defendants"), as follows:

## PRELIMINARY STATEMENT

1.      This is an action for replevin, injunctive relief, breach of contract, conversion, tortious interference with prospective economic advantage and an accounting on behalf of JOMMS and against Defendants based on Defendants' unlawful and unauthorized seizure of approximately $4 million worth of inventory belonging to JOMMS comprising tens of thousands

of rare or collectible cinematic memorabilia items (the "Inventory"). Pursuant to oral agreements between the parties, Defendants agreed to lease warehouse space located at 40 Iowa Avenue, Paterson, New Jersey (the "Warehouse") to store the Inventory, and JOMMS agreed to (1) pay the costs of moving the Inventory to the warehouse, (2) pay lease costs, (3) permit Defendants to sell select items from the Inventory, subject to JOMMS's consent and price directives, and (4) keep a portion of the net profits generated by any such sales. Pursuant to the parties' agreement, JOMMS was permitted to sell items from the Inventory at its discretion without any obligation to share the net profits from such sales with Defendants. When Defendants unilaterally determined that JOMMS had fallen behind on repaying monies allegedly owed to Defendants, however, Defendants unlawfully and improperly took complete control over the Inventory, in which they neither hold nor have recorded a security interest, and began selling items without JOMMS's consent or pricing input, and refused to pay over to JOMMS its share of the net profits from such sales. In addition, Defendants concocted an outrageous falsehood that they had "purchased" the complete Inventory years earlier for a mere $70,000 (less than two percent of the market value of the Inventory) and refused to permit JOMMS to continue to sell items from the Inventory. As a result, Defendants have unlawfully converted approximately $5 million worth of Inventory, have deprived JOMMS of its share of net profits on Defendants' sales from the Inventory, have prevented JOMMS from making sales from the Inventory and threaten to interfere with and scuttle a tentative agreement that JOMMS has made with a third party to purchase the entire Inventory at market value.

## PARTIES

2.     Plaintiff JOMMS is a corporation organized under the laws of New York with its principal place of business located in New York, New York. JOMMS is owned and operated by Jerry Ohlinger ("Ohlinger"), who has been in the movie memorabilia trade for nearly forty years.

3.     Defendant Legend is a corporation organized under the laws of Nevada and registered to do business in New Jersey, with its principal place of business located in Rutherford, New Jersey. Upon information and belief, Legend is owned and operated by Chatoff and Hu and used interchangeably by Chatoff and Hu with Legend Enterprise to conduct the same business.

4.     Defendant Legend Enterprise is a corporation organized under the laws of New Jersey with its principal place of business located in Rutherford, New Jersey. Upon information and belief, Legend Enterprise is owned and operated by Chatoff and Hu and used interchangeably by Chatoff and Hu with Legend to conduct the same business.

5.     Chatoff, who uses the names Sean Chatoff and David Chatoff, is a citizen of New Jersey residing in Rutherford, New Jersey. Upon information and belief, Chatoff is married to Hu, with whom he owns all or substantially all of the outstanding stock of defendants Legend and Legend Enterprise.

6.     Hu, who uses the names Xingling Hu and Celine Hu, is a citizen of New Jersey residing in Rutherford, New Jersey. Upon information and belief, Hu is married to Chatoff, with whom she owns all or substantially all of the outstanding stock of defendants Legend and Legend Enterprise.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction exists pursuant to 28 U.S.C. section 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(b) (1) and (2), because one or more of the defendants resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### Common Allegations

9. In or about June 1977, Ohlinger incorporated plaintiff JOMMS (erroneously listed as "Jerry Ohinger's Movie Material Store, Inc." in the records of the New York State Department of State).

10. Since that time, JOMMS has been engaged in the buying and selling of cinematic memorabilia and rarities from and to collectors and the general public.

11. In or about May 2002, Legend was incorporated in the State of Nevada. In or about August 2012, Legend first registered with the New Jersey Secretary of State as a foreign company authorized to do business in New Jersey.

12. In or about January 2014, Legend Enterprises was incorporated in the State of New Jersey.

13. In or about 2003, Plaintiff and Legend agreed to collaborate in a joint venture involving the sale of reproductions of movie posters. According to their agreement, Plaintiff purchased a high-quality laser printer and made available original movie posters it owned from which reproductions were printed. Legend purchased a high-quality scanner to scan Plaintiff's

original posters for the purpose of printing high-quality reproductions on the laser printer. Plaintiff paid Legend $4 a print for each print-out made by Legend and sold such reproductions in its retail space in Manhattan. Legend, in turn, was given access to Plaintiff's original posters and allowed to print reproductions at no cost to sell at street stands and, occasionally, at wholesale.

14. This arrangement continued until in or about 2013, when the market for prints of movie posters became saturated and unprofitable.

15. In or about July 2010, Plaintiff engaged an independent appraiser to estimate the value of the Inventory. The appraiser prepared and delivered a written report describing the general contents of the Inventory and assessing the value of the Inventory at anywhere between $2.9 million and $8 million, depending on how the Inventory was commercially exploited. Given the millions of items comprising the Inventory, it is not possible for Plaintiff to provide a list of all items in the Inventory. However, the Inventory comprises the following categories in approximate numbers of pieces: (a) photographs (1.1 million pieces); (b) posters (approximately 250,000 pieces); (c) magazines from the 1920s to current (several thousand pieces); (d) books (several hundred pieces); (e) vinyl records (approximately 100 pieces); (f) DVDs (several hundred pieces); (g) 35mm fine-grain masters of "Flash Gordon" (12 reels valued at $35,000); and (f) copies and original negatives, both black-and-white and color (about 300,000 pieces). All movie memorabilia located in the Warehouse, with the exception of a small batch of items brought there by Defendants, comprise the Inventory. The approximately 1.1 million photographs that form part of the Inventory are, by themselves, worth $3 million to $4 million (the "Photographs").

16. In or about 2011, Plaintiff and Legend modified their joint venture agreement to greatly expand the types of items they would collaborate to sell. Plaintiff and Legend agreed that Plaintiff would relocate Plaintiff's vast Inventory of movie memorabilia, including scripts, studio photos, posters, promotional materials and other items, to the Warehouse. Plaintiff agreed to pay all expenses for the Warehouse, including rent, common charges and insurance, and Legend agreed to provide staff at the Warehouse to service sales from the inventory.

17. In or about August 2011, Defendant Legend executed a lease for the Warehouse. Plaintiff terminated its leases for various retail and other warehouse spaces where it maintained the Inventory and consolidated the Inventory in the Warehouse. Until the parties' dispute arose in or about September 2014, furthermore, Plaintiff paid substantially all expenses related to the lease of the Warehouse, including rent, common charges and insurance.

18. Pursuant to Plaintiff's and Legend's agreement, Plaintiff was permitted to sell items from the Inventory, primarily through postings on eBay. Legend retrieved items requested by Plaintiff from the Inventory and delivered them to Plaintiff for sale to Plaintiff's customers. In exchange, Legend was also permitted to sell items from the Inventory, primarily through postings on eBay, as long as it paid seventy-five percent of the proceeds of such sales to Plaintiff. Legend was required to seek and obtain Plaintiff's advance approval of its sales from the Inventory and was only allowed to sell items at a price determined by Plaintiff, which had vastly more experience in the movie memorabilia market.

19. Plaintiff and Legend acted consistently with their joint venture agreement until in or about early September 2014, when Legend unilaterally terminated the joint venture, refused to permit Plaintiff to sell items from the Inventory, refused to pay or credit Plaintiff with seventy-

five percent of the net proceeds of Legend's sales from the Inventory and refused to seek or obtain Plaintiff's advanced approval or pricing guidance before making such sales.

20. Instead, Legend, and/or Legend Enterprise, insisted that it or they owned the Inventory outright and Plaintiff had no rights thereto or any portion thereof.

21. Legend's ostensible reason for terminating the joint venture with Plaintiff and claiming ownership of the Inventory was Plaintiff's alleged failure to repay certain monies that Legend claimed it had loaned to Plaintiff. However, Plaintiff and Legend had agreed that any monies owed by Plaintiff to Legend would be repaid from Plaintiff's seventy-five percent share of sales made by Legend from the Inventory.

22. At no time did Plaintiff grant Legend, or any other defendant, a security interest in the Inventory or any portion thereof, nor has Legend, nor any other defendant, recorded or perfected a security interest in the Inventory or any portion thereof. Nor has Plaintiff ever "sold" or transferred ownership of the Inventory, or any portion thereof, to Legend or any other defendant.

23. Legend, in fact, did make certain loans to Plaintiff to provide working capital in the aggregate amount of approximately $80,000.

24. In or about September 2011, for example, Legend loaned Plaintiff $20,000 when Plaintiff was having difficulty paying rent on several warehouse spaces where Plaintiff maintained a significant portion of the Inventory. Plaintiff and Legend agreed that Plaintiff could repay that loan over a five-year period, primarily from Plaintiff's seventy-five percent share of the net proceeds of Legend's sales from the Inventory. At Legend's demand and insistence, inconsistent with the parties' agreement, however, Plaintiff has repaid $17,000 of that $20,000 loan.

25.     In addition, Legend advanced approximately $60,000 in expenses related to leasing the Warehouse. Plaintiff and Legend agreed that Legend's advance on such expenses would be repaid from Plaintiff's seventy-five percent share of net profits obtained by Legend on sales from the Inventory. At no time did Plaintiff, however, grant Legend, or any other defendants, a security interest in the Inventory to secure the advance on expenses, nor has Legend, nor any other defendant, perfected, obtained or recorded any security interest in the Inventory or any part thereof.

26.     Plaintiff is entitled to a credit against Legend equal to seventy-five percent of the net profits obtained by Legend on sales from the Inventory made since Legend's breach of the parties' joint venture agreement and Legend's refusal to permit Plaintiff to sell items from the Inventory.

27.     Despite Plaintiff's demands, including a demand made by Plaintiff's counsel on September 17, 2014, to Defendants to cease and desist selling items from the Inventory without Plaintiff's consent and pricing input and to provide Plaintiff with immediate and unfettered access to the Inventory, Defendants have failed and refused to permit Plaintiff to access or sell items from the Inventory located in the Warehouse.

28.     Among other things, Defendants' refusal to recognize Plaintiff's rights to and interests in the Inventory, in addition to the monetary damages caused thereby, threatens to cause irreparable harm, because: (a) the Inventory represents substantially all of Plaintiff's business assets; (b) Plaintiff's sales from the Inventory represent substantially all of Plaintiff's business revenue; (c) Defendants' conversion of the Inventory threatens to completely ruin Plaintiff's business; (d) most of the items in the Inventory are unique and irreplaceable; and (e) Plaintiff is engaged in good-faith negotiations with an interested third-party who has expressed serious

interest in purchasing all or substantially all of the Photographs at their aggregate market value ($3 million to $4 million), and Defendants' conversion of the Inventory has prevented and will prevent Plaintiff from completing that transaction.

## CAUSES OF ACTION

### First Cause of Action
### Replevin
### (against all Defendants)

29. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 28 above as if fully set forth herein.

30. JOMMS is the sole owner of the Inventory.

31. Defendants have wrongfully taken the Inventory for themselves.

32. Plaintiff has made repeated demands, including on or about September 17, 2014, for return of and/or access to the Inventory.

33. Defendants have failed and refused to return the Inventory to JOMMS or permit JOMMS to use the Inventory, or any portion thereof.

34. Defendants have, furthermore, sold items from the Inventory without JOMMS's approval and pricing direction and have kept the proceeds of such sales for themselves.

35. The Inventory has not been taken for a tax, assessment, or fine pursuant to law, nor has the Inventory or any portion thereof been taken under an execution or attachment against JOMMS's property.

36. As a result of Defendants' failure and refusal to permit JOMMS to possess or use the Inventory, or any portion thereof, JOMMS is entitled to a writ of replevin for possession of the Inventory.

**Second Cause of Action**
**Conversion**
**(against all Defendants)**

37. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38. Plaintiff enjoys full and lawful ownership of the Inventory and is entitled to possess, sell, transfer, access, take possession of and remove the Inventory.

39. Defendants, knowing of Plaintiff's ownership of the Inventory, have, without justification and in violation of Plaintiff's rights to the Inventory, constructively seized the Inventory by refusing to permit Plaintiff to sell any items therefrom, denying Plaintiff physical access to the Inventory and contending that they own the Inventory rather than Plaintiff.

40. As a result of Defendants' actions, Plaintiff has been damaged in the amount of the value of the Inventory, which is estimated to be no less than $5 million, and is entitled to a judgment against Defendants for such amount, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial.

**Third Cause of Action**
*Prima Facie* **Tort**
**(against all Defendants)**

41. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 40 above as if fully set forth herein.

42. Defendants, with knowledge of Plaintiff's rights to and interest in the Inventory, have willfully and maliciously, and without legal justification, interfered with Plaintiff's rights to and interests in the Inventory by failing and refusing to recognize Plaintiff's rights and interests and refusing to permit Plaintiff to possess, sell, transfer, access, take possession of and remove the Inventory or any part thereof.

43. As a result of Defendants' actions, Plaintiff has been damaged in the amount of the value of the Inventory, which is estimated to be no less than $5 million, and is entitled to a judgment against Defendants for such amount, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial.

**Fourth Cause of Action**
**Breach of Contract**
**(against Legend and Legend Enterprise only)**

44. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 43 above as if fully set forth herein.

45. As previously alleged, JOMMS, on the one hand, and Legend and/or Legend Enterprise, on the other hand, agreed to the material terms of a joint venture or *de facto* partnership relating to the sale of items from the Inventory, including terms related to sharing profits on sales made by Legend and/or Legend Enterprise therefrom, thereby creating an enforceable agreement between them.

46. Until recently, the parties acted consistently with their agreement related to the joint venture, with JOMMS permitting Legend and/or Legend Enterprise to offer for sale, and to sell, select items from the Inventory, with JOMMS's advance permission and pricing input, and the parties splitting the net proceeds of such sales, with JOMMS receiving seventy-five percent of net proceeds from such sales and Legend and/or Legend Enterprise receiving the remainder.

47. In addition, consistent with their agreement, JOMMS has, until recently, been permitted to sell items from the Inventory directly to its own customers, with Legend's and/or Legend Enterprise's assistance in retrieving and delivering to Plaintiff such items pursuant to JOMMS's request and instructions.

48. JOMMS has complied fully with its obligations pursuant to the parties' agreement.

49. Legend and/or Legend Enterprise have, without justification, breached the terms of the parties' joint-venture agreement by, among other things, failing and refusing to: (a) seek JOMMS's consent and pricing input prior to making sales from the Inventory, resulting in sales from the Inventory significantly below market value; (b) pay over to JOMMS its share of the net proceeds from such sales; and (c) permit JOMMS to make sales to its own customers from the Inventory, thereby threatening to destroy JOMMS's business.

50. Upon information and belief, these breaches of Legend's and/or Legend Enterprise's contractual obligations have injured JOMMS in the amount of no less than $100,000, with such damages continuing to accrue, and JOMMS is entitled to a judgment in such amount, plus interest and costs of suit.

### Fifth Cause of Action
### Breach of Fiduciary Duties
### (against Legend and Legend Enterprise only)

51. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 50 above as if fully set forth herein.

52. As previously alleged, JOMMS, on the one hand, and Legend and/or Legend Enterprise, on the other hand, agreed to the material terms of a joint venture or *de facto* partnership relating to the sale of items from the Inventory, including terms related to sharing profits on sales made by Legend and/or Legend Enterprise therefrom, thereby creating a fiduciary relationship between them.

53. Until recently, the parties acted consistently with their agreement related to the joint venture, with JOMMS permitting Legend and/or Legend Enterprise to offer for sale, and to

sell, select items from the Inventory, with JOMMS's advance permission and pricing input, and the parties splitting the net proceeds of such sales, with JOMMS receiving seventy-five percent of net proceeds from such sales and Legend and/or Legend Enterprise receiving the remainder.

54. In addition, consistent with their agreement, JOMMS has, until recently, been permitted to sell items from the Inventory directly to its own customers, with Legend's and/or Legend Enterprise's assistance in pulling and shipping such items pursuant to JOMMS's request and instructions.

55. Legend and/or Legend Enterprise have, without justification, breached the terms of the parties' joint-venture agreement by, among other things, failing and refusing to: (a) seek JOMMS's consent and pricing input prior to making sales from the Inventory, resulting in sales from the Inventory significantly below market value; (b) pay over to JOMMS its share of the net proceeds from such sales; and (c) permit JOMMS to make sales to its own customers from the Inventory, thereby threatening to destroy JOMMS's business.

56. Upon information and belief, these breaches of Legend's and/or Legend Enterprise's fiduciary duties have injured JOMMS in the amount of no less than $5 million, and JOMMS is entitled to a judgment in such amount, plus interest and costs of suit, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial.

**Sixth Cause of Action**
**Aiding and Abetting Breach of Fiduciary Duties**
**(against Chatoff and Hu only)**

57. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 56 above as if fully set forth herein.

58. Chatoff and Hu exercise full control over Legend and/or Legend Enterprise, and they have used their position of control to cause Legend and/or Legend Enterprise to breach the

latter's fiduciary duties to Plaintiff while knowing that Legend and/or Legend Enterprise owe fiduciary duties to Plaintiff.

59. Chatoff and Hu, by knowingly aiding and abetting Legend's and/or Legend Enterprise's breaches of fiduciary duties, have injured JOMMS in the amount of no less than $5 million, and JOMMS is entitled to a judgment in such amount, plus interest and costs of suit, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial.

**Seventh Cause of Action**
**Intentional Interference With Prospective Economic Advantage**
**(against Legend and Legend Enterprise only)**

60. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 60 above as if fully set forth herein.

61. Plaintiff has been selling items from the Inventory for years, with Defendants' knowledge and cooperation in helping Plaintiff deliver sold items to its customers.

62. Legend and/or Legend Enterprise understand that Plaintiff's business is to sell items to customers from the Inventory and that such sales are made continuously and in large volume.

63. Legend and/or Legend Enterprise, by claiming ownership of the Inventory and failing and refusing to let JOMMS sell items from the Inventory, have purposely and without justification interfered with Plaintiff's ability to market and sell items from the Inventory to its customers, and Legend and/or Legend Enterprise in fact intended to interfere with and prevent such sales.

64. As a result of Legend's and/or Legend Enterprise's interference, JOMMS has been unable to fulfill customer orders and sell items from the Inventory, resulting in injury to

Plaintiff in an amount no less than $100,000, with such damages continuing to accrue. In addition, these Defendants' interference threatens to obstruct Plaintiff's efforts to sell the Photographs to an interested third-party buyer for the full market value of $3 million to $4 million. Plaintiff is also entitled to exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial.

### Eighth Cause of Action
### Aiding and Abetting Intentional Interference With
### Prospective Economic Advantage
### (against Chatoff and Hu only)

65. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 64 above as if fully set forth herein.

66. Chatoff and Hu exercise full control over Legend and/or Legend Enterprise, and they have used their position of control to cause Legend and/or Legend Enterprise to knowingly prevent Plaintiff from making sales from the Inventory to its customers.

67. Chatoff and Hu, by knowingly aiding and abetting Legend's and/or Legend Enterprise's interference with JOMMS's sales, have injured JOMMS in the amount of no less than $4 million, with such damages continuing to accrue, and JOMMS is entitled to a judgment in such amount, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial.

### Ninth Cause of Action
### Injunctive Relief
### (against all Defendants)

68. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 67 above as if fully set forth herein.

69. Defendants, by taking and refusing to return the Inventory, which is worth no less than $4 million, and also making sales from the Inventory that are substantially below market

price, threaten immediate and irreparable harm to Plaintiff, which, after operating for almost 40 years, risks being forced to close its business permanently because Defendants have deprived it of substantially all business assets and revenue and have deprived it of unique and irreplaceable merchandise.

70. Further, if not for Defendants' interference, JOMMS, which had previously generated significant and continuing profits from the sale of items from the Inventory, would have been able to fulfill customer orders and sell additional items for a profit of no less than $100,000.

71. In addition, Defendants, by converting the Inventory, threaten to cause immediate and irreparable harm to Plaintiff by preventing Plaintiff from reaching a final agreement with an interested third-party who has expressed serious interest in purchasing all, or substantially all, of the Photographs at their market value ($3 million to $4 million).

72. Remedies available at law are insufficient to compensate Plaintiff for its injuries because Defendants, by taking and refusing to return the Inventory, threaten the existence of Plaintiff's business, have converted unique and irreplaceable merchandise and, because Defendants are selling items from the Inventory at substantially below market value, Defendants will be unable to satisfy a money judgment.

73. Remedies available at law also are insufficient to compensate Plaintiff for its injuries because Defendants, by taking and refusing to return the Inventory, threaten to interfere with and scuttle a tentative agreement that JOMMS has made with a third party to purchase the entire Inventory at market value and, because they sell items from the Inventory at substantially below market value, Defendants will be unable to satisfy a money judgment.

74. Considering the balance of hardships between Plaintiff, on the one hand, which faces the imminent loss of its entire business and a $3 million to $4 million sale, and Defendants, on the other hand, whose loans Plaintiff could repay in full if Plaintiff completes the third-party transaction described above, a remedy in equity is warranted.

75. Finally, the public interest would not be disserved by an injunction, which would resolve a dispute of a purely private nature without affecting the interests of any third person except for the third-party purchaser, who would benefit from an injunction.

76. As a result of the foregoing, JOMMS is entitled to a preliminary injunction that prohibits Defendants, during the pendency of this case, from transferring possession of any item comprising the Inventory or otherwise selling or disposing of any such item and further requiring Defendants to grant Plaintiff full and unfettered access to the Inventory.

77. Also as a result of the foregoing, JOMMS is entitled to a permanent injunction that prohibits Defendants from transferring possession of any item comprising the Inventory or otherwise selling or disposing of any such item and further requiring Defendants to grant Plaintiff full and unfettered access to the Inventory.

### Tenth Cause of Action
### Accounting
### (against all Defendants)

78. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 77 above as if fully set forth herein.

79. As previously alleged, JOMMS, on the one hand, and Legend and/or Legend Enterprise, on the other hand, agreed to the material terms of a joint venture or *de facto* partnership relating to the sale of items from the Inventory, including terms related to sharing

profits on sales made by Legend and/or Legend Enterprise therefrom, thereby creating a fiduciary relationship between them.

80.     As alleged herein, Legend and/or Legend Enterprise have, without justification, breached the terms of the parties' joint-venture agreement and the fiduciary duties they owed to JOMMS as a joint venturer by, among other things, failing and refusing to: (a) seek JOMMS's consent and pricing input prior to making sales from the Inventory, resulting in sales from the Inventory significantly below market value of the items sold; and (b) pay over to JOMMS its share of the net proceeds from such sales.

81.     As also alleged herein, Chatoff and Hu exercise full control over Legend and/or Legend Enterprise, and they have used their position of control to cause Legend and/or Legend Enterprise to breach the latter's fiduciary duties to Plaintiff while knowing that Legend and/or Legend Enterprise owe fiduciary duties to Plaintiff.

82.     Due to Defendants' failure and refusal to provide adequate information concerning the sale of items that comprise the Inventory since Defendants unlawfully converted the Inventory to their own use, JOMMS is entitled to an accounting of all transactions concerning items from the Inventory.

**Eleventh Cause of Action**
**Declaratory Relief**
**(against all Defendants)**

83.     Plaintiff realleges and incorporate the allegations of paragraphs 1 through 82 above as if fully set forth herein.

84.     Plaintiff contends that it owns the Inventory and that Legend and/or Legend Enterprise entered into a joint-venture agreement as more fully alleged above, and Defendants dispute such contentions.

85.     Pursuant to 28 U.S.C. section 2201(a), Plaintiff is entitled to a judgment from the Court declaring its rights and legal interests with respect to Defendants and the parties' competing claims to and interest in the Inventory.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment on its complaint as follows:

(a)     on its first cause of action, a writ of replevin for possession of the Inventory;

(b)     on its second cause of action, compensatory damages in an amount of no less than $5 million, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial;

(c)     on its third cause of action, compensatory damages in an amount of no less than $5 million, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial;

(d)     on its fourth cause of action, compensatory damages in an amount of no less than $100,000, plus interest and costs of suit;

(e)     on its fifth cause of action, compensatory damages in an amount of no less than $4 million, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial, plus interest and costs of suit;

(f)     on its sixth cause of action, compensatory damages in an amount of no less than $4 million, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial, plus interest and costs of suit;

(g)     on its seventh cause of action, compensatory damages in an amount no less than $4 million, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial;

(h) on its eighth cause of action, compensatory damages in an amount no less than $4 million, plus exemplary damages for Defendants' willful and malicious conduct in an amount to be determined at trial;

(i) on its ninth cause of action, an order enjoining Defendants from transferring possession of any item comprising the Inventory or otherwise selling or disposing of any such item and further requiring Defendants to grant Plaintiff full and unfettered access to the Inventory;

(j) on its tenth cause of action, an accounting of all transactions concerning the Inventory;

(k) on its eleventh cause of action, a judgment from the Court declaring Plaintiff's rights and legal interests with respect to Defendants and the parties' competing claims to and interest in the Inventory;

(l) pre-judgment interest, its attorney's fees incurred herein, and all costs and expenses; and

(m) any further and additional relief that the Court may deem appropriate.

Dated: October 22, 2014                SUMMERS & SCHNEIDER, P.C.

                                       By: _____/s/Douglas M. Schneider_____
                                            Douglas M. Schneider (DS7206)

                                       147 Prince Street, Fl. 2
                                       Brooklyn, New York 11201
                                       Tel. (917) 512-6633
                                       Fax (646) 490-2175
                                       Email douglas@summersandschneider.com

                                       *Attorneys for Plaintiff*
                                       JERRY OHLINGER'S MOVIE MATERIALS
                                       STORE, INC.